[Crim. No. 7317. Second Dist., Div. Three. Mar. 2, 1961.]

THE PEOPLE, Respondent, v. LLEWELLEN DELANEY, Appellant.

Llewellen Delaney, in pro. per., for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and George W. Kell, Deputy Attorney General, for Respondent.

THE COURT.—Llewellen Delaney was accused by information of three offenses of forgery of sales drafts, by which he defrauded Mickey Chung, Bernard's of California, E. C. Morgan and Bank of America National Trust and Savings Association of $73.73; defrauded Ben Martin, Tuxedo Center, Morgan and the bank of $91.81, and defrauded Trojan Camera and the bank of $40.62. It was alleged that Delaney had served a term in prison following conviction of forging and passing United States obligation, a felony, a term following conviction of forgery and a term following conviction of issuing check without sufficient funds. The prior convictions were admitted by defendant.

In a jury trial in which he was represented by counsel defendant was convicted of the three offenses charged, his motion for a new trial was denied, probation was denied and sentence to state prison was imposed.

By his trial counsel defendant appealed from the judgment and the order denying his motion for a new trial. Upon application of defendant's attorney, additional time in which to file a brief was granted; upon the failure of the attorney to file a brief, and after due notice given him, the appeal was dismissed. Upon the representation that a substitution of defendant to represent himself had been signed, although not filed, the dismissal was vacated. Defendant has filed a brief of his own. With the brief he requested appointment of counsel. After reading the record the court denied his request for the reason that the appeal is obviously without merit.

The forgeries of which defendant was convicted were but three of at least 27 and perhaps as many as 100 forgeries committed by defendant, and others, in the use of a stolen Bank of America credit card. Defendant and E. C. Morgan

had known each other for several years. Morgan was, and for 15 years had been employed in the Roads and Grounds Department of the Navy at Port Hueneme. One night, after they had both been drinking in a café, Morgan undertook to drive home a man who called himself Johnson, but not being able to learn where Johnson lived, Morgan drove to his own home and retired, leaving Johnson drunk and asleep in the car. The following morning Johnson was missing and also Morgan's billfold, which contained his Bank of America credit card, with which the owner could make purchases up to $100 each on credit. Shortly thereafter defendant commenced making purchases by use of the card, representing himself to be Morgan, and signing Morgan's name upon the purchase drafts. In the trial defendant testified that he had been given the card by one Earl Davis, that he took it to Morgan and entered into an arrangement with Morgan that he, defendant, would use the card in making purchases, and that they would divide equally the merchandise that was purchased. Morgan testified that he did not know how defendant gained possession of the card and denied that he had ever discussed the use of the card with defendant.

Testifying at the trial defendant admitted having made the purchases described in the three counts of the information; he had made purchases in Los Angeles and San Francisco of clothing for himself and his wife, presents for friends, and cases of whiskey wherever he could buy it; also that he had loaned the card to seven or eight other people for them to use in the same manner. He did not attempt to keep track of the number of the purchases or the amounts involved. He testified that at one time he admitted to Morgan that the amount of his purchases was about $3,000 but that Morgan claimed they amounted to about $7,000. Twenty-seven drafts were shown defendant; eighteen of them were introduced in evidence after they had been identified by defendant as having been used by him to make purchases by means of the signing of Morgan's name. The total of these amounted to about $1,400. Questioned by the court the deputy district attorney said he had about one hundred more similar drafts for purchases made by use of the credit card, which he was preparing to question the defendant about. The court directed him to desist, observing that the evidence would be cumulative.

Defendant testified that he had given Morgan, from the purchases he had made, merchandise of the value of $700 or $800. A witness for defendant, a bartender, testified that he

had purchased two cases of whiskey from Morgan at defendant's home. Another witness who had previously shared an apartment with defendant testified that he saw Morgan take two cases of whiskey from his car at defendant's home. The testimony of defendant and the two witnesses was flatly denied by Morgan, who also testified that he had received nothing from defendant except a fifth of whiskey on New Year's Day.

The jury chose to believe the testimony of Morgan rather than that of defendant and his two friends. Not only was the credibility of the witnesses within the exclusive province of the jury, but the choice the jury made was clearly the more reasonable one. It is not subject to review on the appeal.

Mickey Chung, the victim named in Count I, testified at the preliminary examination, but was not present at the trial. The People produced evidence of their inability to locate Chung for the service of a subpoena, and over defendant's objection that due diligence had not been shown, Chung's testimony at the preliminary was read into evidence. Defendant asserts that a sufficient foundation was not laid for the introduction of this testimony. It is unnecessary to consider the sufficiency of the showing since defendant admitted having made the purchase from Chung as alleged in the information.

When the People questioned defendant concerning the numerous purchase drafts which he had identified as his own, and offered them in evidence, he objected, the objection was overruled and the drafts were admitted. It is contended that this was error. Although the evidence would have been admissible to prove systematic misuse of the credit card it could have served no purpose after defendant's admission that his purchases may have amounted to as much as $3,000, but if the evidence did no good, it did no harm. It was not, as defendant contends, misconduct for the court to ask the deputy district attorney how many more drafts he proposed to question defendant about, and for the latter to reply that he had about one hundred.

In support of his motion for a new trial defendant offered the affidavits of Roosevelt Johnson, Irving Jackson and Jerry Johnson. The affidavits were to the effect that the affiants had seen Morgan take one or two cases of what appeared to be whiskey from defendant's house around Christmas 1959 and January 1, 1960. There was no showing that

the testimony of the affiants was unavailable for use at the trial or that the evidence was newly discovered. Defendant filed no affidavit on the motion. It was properly denied.

The judgment and the order appealed from are affirmed.